**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Keith G. Taylor,
Petitioner Below, Petitioner

**FILED**

**April 6, 2016**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) No. 16-0910 (Mineral County 14-AA-1)

Dale W. Steager, West Virginia
State Tax Commissioner,
Respondent Below, Respondent

**MEMORANDUM DECISION**

Respondent State Tax Commissioner (Tax Commissioner)[1] assessed Petitioner Keith G. Taylor $13,265 in taxes, interest and penalties for the 2012 tax year. Although Mr. Taylor unsuccessfully challenged the assessment with the Office of Tax Appeals (OTA), he prevailed in his subsequent appeal to the circuit court, which vacated the assessment. On appeal to this Court, Mr. Taylor claims that he also was entitled to a ruling on tax refunds for the 2009, 2010 and 2011 tax years and that he was denied due process.[2] The Tax Commissioner cross-appeals and alleges that the circuit court should have affirmed the assessment and erred in imposing a burden on the Tax Commissioner to show that a fraudulent or false return was filed under West Virginia Code § 11-10-5c. We affirm the circuit court's rulings as to Mr. Taylor's assignments of error. However, because the circuit court applied the incorrect statute, we conclude that the circuit court's reversal of the OTA's final decision was erroneous. Thus, we affirm in part, reverse in part, and remand this case for entry of an order reinstating the OTA's assessment.

Because this case does not present a new or significant issue of law, and for the reasons set forth herein, we find this case satisfies the "limited circumstances" requirements of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is proper for disposition as a memorandum decision.

---

[1] Dale A. Steager became the State Tax Commissioner on January 16, 2017, and has therefore been substituted as the respondent party pursuant to Rule 41(c) of the Rules of Appellate Procedure. The Tax Commissioner is represented by Patrick Morrisey, Attorney General, and L. Wayne Williams, Assistant Attorney General, in this appeal. Mr. Taylor appears pro se.

[2] Because Mr. Taylor's four separate assignments of error are redundant, the issues have been grouped into two alleged errors.

1

# I. Facts and Procedural History

Mr. Taylor and his wife reside in Mineral County, West Virginia. On April 15, 2013, Mr. Taylor filed his 2012 Federal Income Tax Return (federal tax return) as "married filing separately," showing an adjusted gross income of $222,716. On his 2012 West Virginia State Income Tax Return (state tax return), he reported his state taxable income as $212,716 due to an $8,000 credit and a $2,000 exemption. The return showed a balance due of $13,265, which Mr. Taylor did not pay.

On July 22, 2013, the Tax Commissioner issued a Notice of Assessment against Mr. Taylor based on his failure to pay the personal income tax shown due on the state tax return. It subsequently reissued the assessment against him for the 2012 tax year on December 20, 2013, due to Petitioner's continued failure to pay the tax due. On January 4, 2014, Mr. Taylor filed an amended federal tax return reducing his 2012 adjusted gross income to $10,900, stating that "[t]he Service has determined that I am an 'Insolvent Tax Payer.' Upon instruction of IRS Agent B. Alaia, Badge 1439, I have agreed to offset part of my otherwise taxable income by giving up certain valuable tax attributes including tax credits and carryovers. . . ."

On February 3, 2014, Mr. Taylor filed a Petition for Reassessment with the OTA challenging the assessment.[3] He subsequently filed an amended 2012 state tax return on February 7, 2014 reflecting the change in his federal adjusted gross income. The Tax Commissioner issued a refund check to Mr. Taylor based upon his amended state tax return but later determined that it had committed an error in issuing a refund. Relying on his amended return, Mr. Taylor appealed the Tax Commissioner's determination that he owed taxes to the State for the 2012 tax year. He subsequently filed petitions for refund and amended West Virginia income tax returns for the years 2009, 2010, and 2011.

On August 27, 2014 a hearing was held before OTA Chief Administrative Law Judge A.M. "Fenway" Pollack (ALJ Pollack). Because the petition for reassessment with regard to the 2012 tax year was previously consolidated with the refund petitions that Mr. Taylor filed as to the 2009, 2010, and 2011 tax years, ALJ Pollack inquired about those refund petitions during the hearing. The Tax Commissioner responded that any refunds owed to Mr. Taylor for the 2009, 2010, and 2011 tax years were being held pending the outcome of his petition for reassessment for the 2012 tax year and that if ALJ Pollack determined that Mr. Taylor did not have any tax liability for 2012, refunds for the other tax years would be issued.

Following the Tax Commissioner's explanation regarding the 2009, 2010 and 2011 refunds owed to Mr. Taylor, ALJ Pollack asked Mr. Taylor whether those tax years were being withdrawn from its consideration because "we are limiting ourselves to Docket

---

[3] Mr. Taylor appeared pro se during the course of the proceedings below.

Number 14-050, which concerns the December 20, 2013 assessment [for the 2012 tax year]." Mr. Taylor replied, "Correct." Later in the hearing, when Mr. Taylor attempted to introduce documents with regard to the 2009, 2010, and 2011 tax years, the ALJ ruled that documents about those tax years were unnecessary. Conceding that the ALJ's ruling was correct, Mr. Taylor stated "[w]e all agreed" that only "2012 remains in controversy."

With respect to the 2012 state tax assessment, Mr. Taylor argued that the Tax Commissioner had no power to issue it since the IRS had accepted his amended 2012 federal tax return for processing. However, ALJ Pollack ruled that the Tax Commissioner was not required to accept an amended personal income tax return simply because the IRS processed a corresponding federal tax return. ALJ Pollack determined that the bulk of the income that Mr. Taylor reported on his 2012 federal return included an IRA distribution of $209,847. When ALJ Pollack questioned Mr. Taylor to determine the basis for the reduction in his federal adjusted gross income, Mr. Taylor stated that it was offset by legitimate carryovers from prior years of capital losses incurred in trading precious metals. On cross-examination, Mr. Taylor stated that he was in possession of additional discovery material substantiating the reductions made to his federal adjusted gross income. ALJ Pollack continued the hearing and held the record open allowing Mr. Taylor time to submit additional documents detailing the capital losses he claimed that he incurred. Mr. Taylor submitted those documents to the Tax Commissioner and filed a motion to close the record on November 7, 2014.

On November 13, 2014, the OTA held a second hearing by telephone. The transcript reveals that although Mr. Taylor was on the telephone prior to the start of the hearing, he became disconnected. The OTA made several attempts to reach Mr. Taylor but was unsuccessful. Thus, the hearing continued in his absence.[4] During this hearing, ALJ Pollack denied Mr. Taylor's motion to close the record. The Tax Commissioner presented testimony from Jan Mudrinich, Supervising Attorney for the Legal Division of the State Tax Department. Mr. Mudrinich testified that Mr. Taylor's case involved a simple assessment where he had filed a tax return stating that he owed taxes but failed to make payment.

---

[4] The circuit court's order states that Mr. Taylor alleged that something happened to the line making him unable to participate. However, the Tax Commissioner maintained that Mr. Taylor simply disconnected the call and refused to answer when the OTA called back. The OTA's order states that Mr. Taylor admitted in a December 11, 2014 letter that he hung up, stating that "[n]o one should be expected to hold a silent phone for more than ten minutes."

3

On August 20, 2015, the OTA issued an order affirming the Tax Commissioner's assessment for the 2012 tax year, finding Mr. Taylor liable for $13,282.18.[5] The OTA specifically addressed Mr. Taylor's amended 2012 state tax return and whether he was entitled to offset his 2012 ordinary income received from distribution of a retirement account against capital losses that occurred between 2010 and 2012 and concluded that Mr. Taylor failed to meet his burden of proof.[6] Concluding that "it [was] black letter law that where a taxpayer has no capital gains in the tax year involved, no capital loss is allowable," the OTA found that "the governing statute and legislative rules clearly grant[ed] [the Tax Commissioner] the power to investigate and to make changes to an individual's accounts or returns as well as to make appropriate assessments for non-payment of taxes when necessary. *See* W. Va. Code § 11-10-7; W. Va. Code § 11-21-12 *et seq*.; 110 Code of State Regulations 21, § 59."[7] In its order, the OTA also noted that the refund claims for the 2009, 2010, and 2011 tax years presented no appealable issues, and thus, the only year at issue in the case was tax year 2012.

Mr. Taylor appealed the OTA's decision to the Circuit Court of Mineral County. In addition to challenging the OTA's decision, Mr. Taylor also alleged multiple assignments of error, in various filings, regarding the professionalism of ALJ Harlan, ALJ Pollack, and legal counsel for the Tax Commissioner. The circuit court reversed the OTA's decision on August 25, 2016, ruling that (1) Mr. Taylor's complaints regarding the professionalism of ALJ Harlan, ALJ Pollack, and legal counsel for the Tax Commissioner were without merit; and (2) the OTA's finding that the Tax Commissioner had "the power to investigate and to make changes to an individual's accounts or returns as well as to make appropriate

---

[5] Although ALJ Pollack presided over both hearings, Chief Administrative Law Judge Heather Harlan (ALJ Harlan), who was subsequently appointed following his retirement, entered the August 20, 2015 OTA order.

[6] 26 U.S.C. § 1211 provides:

> (b) Other taxpayers. In the case of a taxpayer other than a corporation, losses from sales or exchanges of capital assets shall be allowed, only to the extent of the gains from such sales or exchanges, plus (if such losses exceed such gains) the lower of-
> > (1) $3,000 ($1,500 in the case of a married individual filing a separate return), or
> > (2) the excess of such losses over such gains.

26 U.S.C. § 1211 (2012).

[7] These statutory and regulatory provisions are discussed in further detail below.

assessments for non-payment of taxes when necessary pursuant to West Virginia Code § 11-10-7, § 11-21-12 et seq., and 110 C.S.R. 21, § 59" was arbitrary and erroneous.

The circuit court noted that the legality of the decrease between the 2012 tax return and amended return was, as identified by the Tax Commissioner, the only issue in the case. It also noted that an affidavit provided by the Tax Commissioner's agent indicated that the amended return was "accepted but the refund was made in error because of the subsequent filing of an appeal by Mr. Taylor relating to the 2012 tax assessment based upon his original filing." The circuit court found that while for state tax purposes, federal adjusted gross income can be adjusted depending on state tax law modifications provided by statute,[8] there was no authority for the Tax Commissioner to disregard an accepted federal amended tax return's representation of adjusted gross income without conducting some form of investigation and making a determination of fraud or falsity.

The court found that West Virginia Code § 11-21-12 and its accompanying rules establish that federal adjusted gross income is the actual starting point for determining state tax liability and the legislative scheme indicated a heavy reliance on the IRS's acceptance of a federal tax return as establishing the accuracy of a state return.[9] Thus, the circuit court

---

[8] West Virginia Code § 11-21-12(a) (2017) provides that "[t]he West Virginia adjusted gross income of a resident individual means his or her federal adjusted gross income as defined in the laws of the United States for the taxable year with the modifications specified in this section."

[9] For example, the circuit court noted that if there is an amendment to a federal tax return, a taxpayer is required to do as follows:

> 59.1. General. - If the amount of a taxpayer's federal taxable income reported on his federal income tax return for any taxable year is changed or corrected by the United States Internal Revenue Service or other competent authority or as the result of a renegotiation of a contract or subcontract with the United States, the taxpayer shall report such change or correction in federal taxable income within ninety (90) days after the final determination of such change, correction, or renegotiation, or as otherwise required by the Tax Commissioner, and shall concede the accuracy of such determination or state wherein it is erroneous. When making such report, the taxpayer shall disclose to the Tax Commissioner the full particulars of such federal tax change or correction.

5

concluded that the application of West Virginia Code § 11-10-7[10] (regarding all state tax assessments) and West Virginia Code § 11-21-12 (specifically dealing with West Virginia personal income tax), creates an ambiguity that should be resolved in favor of the taxpayer.

Finding that the statutory scheme supported a presumption that the federal adjusted gross income reported to the IRS and state is correct, the court determined that the Tax Commissioner was required to conduct an investigation regarding the return under West Virginia Code § 11-10-5a[11] and declare it false or fraudulent under West Virginia Code §

> 59.2. Any taxpayer who files an amended federal income tax return must also file within ninety (90) days thereafter an amended West Virginia income tax return, and shall in addition provide the Tax Commissioner with such further information as he may require.

W. Va. Code St. R. § 110-21-59. It further observed that West Virginia Code § 11-21-59 requires individuals to amend their state tax return any time their federal tax return is amended and indicate why the tax return was amended.

[10] West Virginia Code § 11-10-7(a) provides, in pertinent part,

> (a) General.– If the tax commissioner believes that any tax administered under this article has been *insufficiently returned by a taxpayer*, either *because the taxpayer has failed to properly remit the tax*, or has failed to make a return, or has made a return which is incomplete, deficient or otherwise erroneous, *he may proceed to* investigate and determine or estimate the tax liability and *make an assessment therefor*.

W. Va. Code § 11-10-7(a) (2013) (emphasis added).

[11] West Virginia Code § 11-10-5a provides:

> For the purpose of ascertaining the correctness of any tax return or assessment and for the purpose of making an estimate of any taxpayer's liability for tax administered under this article, and for the further purpose of conducting the hearings provided for in section nine [§ 11-10-9] or nine-a [§ 11-10-9a] of this article, the tax commissioner shall have the power to examine or cause to be examined, by any agent or representative designated by the Tax Commissioner, any books, papers, records, memoranda, inventory or equipment bearing upon the matters required to be included in the tax return, may make test checks

11-10-5c[12] and identify the reasons supporting its determination before shifting the burden of proof to the taxpayer to provide facts in support of the original return. Accordingly, the circuit court concluded that rather than conduct an investigation and make a determination as to whether the 2012 tax return was false or fraudulent under § 11-10-5c, the Tax Commissioner disregarded the amended 2012 state tax return and proceeded under W. Va. Code § 11-10-7 to declare the return erroneous and conclude that the original assessment was correct. The court vacated the assessment because the IRS did not, as it appeared from the record, question the accuracy of Mr. Taylor's amended 2012 federal tax return or conduct an audit, and because the Tax Commissioner had accepted his amended 2012 state return while denying him a refund without first making a determination of falsity or fraud.[13]

Mr. Taylor now appeals the circuit court's order to the extent that the circuit court denied his refund and due process claims. In response to Mr. Taylor's appeal, the Tax Commissioner cross-appeals the circuit court's reversal of the OTA's final decision.

---

of tax yield, and may require the attendance of the person rendering the tax return or the attendance of any other person having knowledge of the matters contained therein and may take testimony and may require material proof with power to administer oath to such person or persons.

W. Va. Code § 11-10-5a (2013).

[12] West Virginia Code § 11-10-5c provides:

If any person fails to file any return required by this article or any article administered by this article, at the time required by law or by regulation made under authority of law, or makes and files willfully or otherwise, a false or fraudulent return, the Tax Commissioner may proceed to make such return from any information available to him, whether obtained through testimony or otherwise.

W. Va. Code § 11-10-5c (2013).

[13] Declaring that its decision was based solely on the arbitrary application of the statutory provision regarding the investigative function of the Tax Commissioner, the court noted that nothing in its decision would prevent the Tax Commissioner from pursuing the matter, should a determination of fraud or falsity be made with regard to Mr. Taylor's amended 2012 state tax return.

7

## II. Standard of Review

With respect to the standard of review applicable to tax appeals, this Court has held:

> In an administrative appeal from the decision of the West Virginia Office of Tax Appeals, this Court will review the final order of the circuit court pursuant to the standards of review in the State Administrative Procedures Act set forth in *W. Va. Code*, 29A-5-4(g) [1988]. Findings of fact of the administrative law judge will not be set aside or vacated unless clearly wrong, and, although administrative interpretation of State tax provisions will be afforded sound consideration, this Court will review questions of law *de novo*.[14]

With these standards in mind, we proceed to consider the parties' arguments.

## III. Discussion

### A.    Mr. Taylor's Assignments of Error

Mr. Taylor first alleges that the circuit court failed to rule on whether he was entitled to refunds for the 2009, 2010 and 2011 tax years. Mr. Taylor argues that because the 2009, 2010 and 2011 tax years had been consolidated into the same case as the 2012 tax year, he was entitled to a ruling on whether he was owed those refunds. Conversely, the Tax Commissioner argues that the OTA properly ruled that the 2009, 2010, and 2011 tax years were no longer at issue. Upon our review of the record before us, we find that this assignment of error has no merit.

The undisputed evidence is that Mr. Taylor voluntarily withdrew his appeal with regard to the prior tax years. As stated above, because the petition for reassessment with regard to the 2012 tax year was previously consolidated with refund petitions Mr. Taylor filed with regard to the prior tax years, the OTA inquired into those refund petitions. The Tax Commissioner responded that any refunds owed to Mr. Taylor for those years were being held pending the outcome of his petition for reassessment and that if Mr. Taylor did not have any tax liability for 2012, refunds for the other tax years would be issued. The record is clear that Mr. Taylor agreed at least twice during the August 2014 hearing that only the 2012 tax assessment was at issue. We find the circuit court made no error in failing to rule on the tax years 2009, 2010 and 2011.

---

[14] Syl. Pt. 1, *Griffith v. Conagra Brands, Inc.*, 229 W.Va. 190, 728 S.E.2d 74 (2012).

Second, Mr. Taylor argues that he was denied due process of law because the circuit court did not provide him an opportunity to present argument on the procedural irregularities that he alleges he suffered before the OTA. Mr. Taylor contends that the conduct of the ALJs and the Tax Commissioner's attorney during the course of these proceedings was "so outrageous as to belie any claim that the State of West Virginia [operates an OTA] that respects the United States Constitution and the ethical burden [demanded] of an [ALJ.]." The Tax Commissioner responds that its attorney's conduct and the OTA's procedures did not deny Mr. Taylor due process of law.

The circuit court considered the various complaints made by Mr. Taylor regarding the professionalism of ALJ Harlan, ALJ Pollack, and legal counsel for the Tax Commissioner and determined that they lacked merit. Upon our review of the record before us, we agree. There is ample evidence in the record demonstrating that Mr. Taylor was a difficult litigant throughout the course of these proceedings.[15] The OTA found that Mr. Taylor chose not to appear at the November 13, 2014, hearing when he hung up the phone before it started. The circuit court did not take issue with this finding. Pursuant to Rule 6(b) of the West Virginia Rules of Administrative Appeals, the circuit court had the discretion to properly make this finding without affording Mr. Taylor oral argument on the issue.[16] Accordingly, we conclude that Mr. Taylor was not denied due process of law.

## B. Tax Commissioner's Cross-Assignments of Error

On cross-appeal, the Tax Commissioner argues that: (1) the circuit court applied the wrong statute, West Virginia Code § 11-10-5c, when it reversed the OTA's order; (2) the circuit court erroneously relied on the IRS's acceptance of Mr. Taylor's federal return for processing as evidence of his state return's accuracy; and (3) the OTA correctly applied 26 U.S.C. § 1211 which clearly limits the use of capital losses to reduce ordinary income.

In reversing the OTA's decision, the circuit court relied upon West Virginia Code § 11-10-5c, which permits the Tax Commissioner to "file a return" for a taxpayer who files either (1) no return or (2) a fraudulent or false return. The Tax Commissioner contends that it did not seek to "file a return" under § 11-10-5c in this case. Rather, Mr. Taylor filed a return for the 2012 tax year, but simply failed to remit payment. Thus, the Tax Commissioner asserts that he acted pursuant to West Virginia Code § 11-10-7(a), which

---

[15] Additionally, the record does not contain any indication that, of the various complaints filed by Mr. Taylor with the Office of Disciplinary Counsel and the Ethics Commission against the legal counsel and ALJs, any action has been taken against them as a result.

[16] Rule 6(b) of the Rules of Procedure for Administrative Appeals provides in pertinent part that the circuit court "may hold oral argument, or may issue a ruling on the petition and response, if any, without oral argument."

permits him to issue an assessment when the taxpayer "has failed to properly remit the tax." Therefore, the Tax Commissioner argues that the circuit court erred in concluding that the Tax Commissioner must first make a finding that the taxpayer has filed a fraudulent or false return, pursuant to West Virginia Code § 11-10-5c, prior to issuing an assessment for the tax shown due on the 2012 return.

Although the procedural background in this case is somewhat convoluted, the facts in this case are simple. As an initial matter, we observe that the Tax Commissioner did not issue any assessment related to Mr. Taylor's amended state return. Mr. Taylor's amended return was filed after the Tax Commissioner issued an assessment based on his original state return. The assessment based on the original return was issued solely because Mr. Taylor failed to pay the tax shown due on his original return. Accordingly, the Tax Commissioner properly proceeded under West Virginia Code § 11-10-7(a) in issuing an assessment against Mr. Taylor because he failed to pay the tax shown due on his original return. While Mr. Taylor's initial appeal focused on the assessment issued following his original 2012 state tax return, thereafter, the OTA properly considered the filing of Mr. Taylor's amended 2012 tax return, and the validity thereof, in connection with reviewing the propriety of the original assessment. Thus, the primary issue before the circuit court, and also before this Court, is whether the OTA committed error in its decision finding that Mr. Taylor's amended federal tax return was erroneous and refusing to accept it as the final tax return for the tax year 2012.

After Mr. Taylor filed his Petition for Reassessment and amended state return, the OTA necessarily sought to determine the basis for the reduction in his federal adjusted gross income and determined that "the governing statute and legislative rules clearly grant the Tax Commissioner the power to investigate and to make changes to an individual's accounts or returns as well as to make appropriate assessments for non-payment of taxes when necessary. *See* W. Va. Code § 11-10-7; W. Va. Code § 11-21-12 et seq.; 110 Code of State Regulations 21, § 59." We cannot state that the OTA's decision was erroneous. West Virginia Code § 11-10-7(a) expressly provides broad authority to the Tax Commissioner to question the accuracy of Mr. Taylor's amended tax return:

> (a) General. – If the tax commissioner believes that any tax administered under this article has been insufficiently returned by a taxpayer, either because the taxpayer has failed to properly remit the tax, or has failed to make a return, or *has made a return which is* incomplete, deficient or *otherwise erroneous, he may proceed to investigate and determine or estimate the tax liability* and make an assessment therefor.[17]

---

[17] W. Va. Code § 11-10-7(a) (emphasis added). Additionally, the circuit court's conclusion that an ambiguity exists between West Virginia Code § 11-21-12 and West

Furthermore, as the Tax Commissioner correctly contends, the circuit court failed to properly consider the entire section of the legislative rule upon which it relied—West Virginia Code of State Rules 110-21-59.1 and -59.2. Section 110-21-59.2 provides, in pertinent part, "Any taxpayer who files an amended federal income tax return must also file within ninety (90) days thereafter an amended West Virginia income tax return, *and shall provide the Tax Commissioner with such further information as he may require.*" (emphasis added). Moreover, pursuant to West Virginia Code § 11-21-59 (2017), the taxpayer is required to provide the Tax Commissioner with information necessary to review an amended return.

West Virginia Code § 11-10A-10(e) provides that the taxpayer generally has the burden of proof before the OTA.[18] The OTA's final decision properly placed the burden of proof on the taxpayer and properly upheld the Tax Commissioner's December 20, 2013, tax assessment against Mr. Taylor for the 2012 tax year. The OTA concluded that Mr. Taylor never fully addressed or substantiated whether he was entitled to offset his 2012 ordinary income received from distribution of a retirement account in the amount of over $200,000 against trading losses that occurred between 2010 and 2012 and that are capital in nature. Despite Mr. Taylor's representation that the IRS agreed to the waiver of capital losses for use as a reduction against ordinary income or capital gains because he is insolvent, there is no correspondence from the IRS in the record stating that $10,900 is the correct calculation of federal adjusted gross income under the Internal Revenue Code.

Relying on federal law, the OTA properly determined that "where a taxpayer has no capital gains in the tax year involved, no capital loss is allowable." *Nordvlom Associates, Inc. v. Cir*, 15 T.C. 220, 223-24. Additionally, 26 U.S.C. § 1211 provides that excess capital losses are limited to $3,000 ($1,500 in the case of a married individual filing a separate return). Because Mr. Taylor's amended return was properly determined by the OTA to be erroneous, and thus, his original 2012 tax return is the one upon which Mr. Taylor's assessment was based, we conclude that the Tax Commissioner's original assessment should be upheld.

---

Virginia Code § 11-10-7 is erroneous. Article 10 applies specifically to the issuance of tax assessments. Article 21, however, addresses West Virginia personal income tax, not assessments. The assessment for Mr. Taylor's tax liability was issued under Article 10, Chapter 11 of the West Virginia Code.

[18] The statute provides, in pertinent part, that "(e) Except as otherwise provided by this code or legislative rules, the taxpayer or petitioner has the burden of proof." W. Va. Code § 11-10A-10(e) (2013). *See also RGIS Inventory Specialists v. Palmer*, 209 W.Va. 152, 155, 544 S.E.2d 79, 82 (2001) (same).

11

For these reasons, we reverse the circuit court's ruling on this issue and remand this matter for entry of an order reinstating the OTA's August 20, 2015 order affirming the Tax Commissioner's assessment for the 2012 tax year.

Affirmed, in part; Reversed, in part; and Remanded.

**ISSUED: April 6, 2018**

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum, II
Justice Allen H. Loughry, II
Justice Elizabeth D. Walker